UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

TERRELL MANUEL,

and

CHARLES E. WHITE,

For themselves and on behalf of all
similarly situated individuals.

Plaintiffs,

v.  CIVIL ACTION NO.: 3:14cv238

WELLS FARGO BANK, NATIONAL ASSOCIATION,

Defendant.



## CLASS COMPLAINT

COME NOW, the Plaintiffs, Terrell Manuel and Charles E. White, on behalf of themselves and all similarly situated individuals and allege the following claims:

### INTRODUCTION

1. This action is brought under the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, et seq. The FCRA imposes on employers that use a background check or other consumer report regarding an employee or job applicant several important procedural requirements designed to protect consumers like Plaintiff.

2. Plaintiffs applied for jobs at Defendant. Defendant used Plaintiffs' consumer reports, that it obtained from First Advantage, a consumer reporting agency, to make the decision not to hire Plaintiffs for employment. In doing so, Defendant failed to comply with the procedural protections and requirements imposed on it by the FCRA.

3. More specifically, Defendant failed to provide Plaintiffs with copies of the

1

consumer reports and a written summary of their FCRA rights prior to discharging them based in whole or in part on the results of the consumer report.

## JURISDICTION/VENUE

4. The Court has jurisdiction under the FCRA, 15 U.S.C. §1681p and 28 U.S.C. §1331.

5. Plaintiff, Terrell Manuel, resides within this District and Division of the Court.

6. Defendant is doing business and maintains the office of its registered agent in Richmond, Virginia, which is in this District and Division.

7. Defendant maintains its records electronically and, therefore, has access to them in this District and Division.

8. Manuel is a Plaintiff in a suit pending in this District and Division before the Honorable Robert E. Payne: *Manuel, et al. v. First Advantage Background Services Corp*, Civil Action No.: 3:14-cv-00221.

9. Specifically, the consumer reports for Manuel and White provided to Wells Fargo were prepared by First Advantage, Defendant in the related case.

10. Under normal circumstances, Plaintiffs would have sued First Advantage and Wells Fargo in the same case.

11. Because this is a class action and the Plaintiffs are not coterminous, Plaintiffs determined that it would be confusing to proceed with certain class claims against one Defendant and alternative class claims against another Defendant.

## PARTIES

12. Terrell Manuel (hereinafter "Manuel") is a "consumer" as protected and governed by the FCRA.

13. Charles E. White (hereinafter "White") is a "consumer" as protected and governed by the FCRA.

14. Defendant Wells Fargo Bank, National Association (hereinafter "Wells Fargo") is a provider of banking, mortgage, investing, credit card, insurance, and consumer and commercial financial services.

15. At all times relevant hereto, Wells Fargo was a "user" of the consumer reports of Plaintiffs and all putative class members, as governed by the FCRA.

## UNNAMED PARTIES

16. First Advantage supplied the consumer reports for Plaintiffs to Defendant.

17. First Advantage was and is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f).

18. First Advantage was and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties.

19. First Advantage is not related by common ownership or affiliated by corporate control with Defendant.

20. The consumer reports were provided by First Advantage to Wells Fargo, not communicated among persons related by common ownership or affiliated by corporate control.

## FACTS AS TO MANUEL

21. In February 2012 Manuel applied for a job as a banker with Wells Fargo.

22. Wells Fargo purchased a background check on Manuel from First Advantage, for an employment purpose.

23. On February 9, 2012 Manuel interviewed with a Wells Fargo recruiter.

3

24. The following week Manuel interviewed with an individual at a branch of Defendant.

25. On February 24, 2012 Wells Fargo offered Manuel a position at the branch where he had his immediately preceding interview.

26. Defendant provided Manuel with an offer letter dated February 24, 2012 and asked him to sign and return it if he was interested in the position.

27. Manuel signed the offer letter on February 27, 2012 and immediately returned it to Wells Fargo.

28. Defendant's representative informed Manuel that he would start employment March 13, 2012.

29. Upon information and belief, Wells Fargo ordered a consumer report on Manuel on February 27, 2012.

30. As March 13, 2012 approached, Manuel still did not know exactly where to report for work, nor had he signed any additional employment related papers.

31. Manuel sent emails to his contacts at Defendant to no avail.

32. Later, Manuel called the recruiter from Wells Fargo, and she informed Manuel that they were waiting on the results of Manuel's background report.

33. The recruiter also informed Manuel that she could not talk about his background report results with him.

34. The recruiter referred Manuel to the background check company, First Advantage.

35. Manuel called Defendant and was informed that it was waiting for additional information.

36. Upon information and belief, Defendant completed the consumer report on Monday, April 2, 2012 and immediately conveyed the information in the report to Wells Fargo.

37. On Tuesday, April 3, 2012 the recruiter for Wells Fargo told Manuel that the report had been completed and the result disqualified Manuel for employment at Wells Fargo.

38. Later in April Manuel received a copy of a "pre-adverse action notification" and a copy of his consumer report from either Wells Fargo or First Advantage.

39. The letter was dated April 3, 2012, but Manuel does not know when the sender put the letter in the mail.

40. The consumer report contained Manuel's alleged criminal history, not information solely as to transactions or experiences between Manuel and First Advantage or Wells Fargo.

41. The report provided by First Advantage contained numerous material errors.

42. Specifically, it contained charges for another individual involving terroristic threats, theft, possession of burglar's tools, and threaten to kill/domestic violence.

43. Neither Wells Fargo nor First Advantage provided Manuel with at least five business days' written advance notice of the fact that Manuel might not be hired based on the results of his consumer report.

44. Neither Wells Fargo nor First Advantage provided Manuel with a copy of his consumer report or a written summary of his FCRA rights at least five business days before deciding not to hire him based in whole or in part on the results of his consumer report.

## FACTS AS TO WHITE

45. White was hired by Wells Fargo and worked there for four years before being transferred to the mortgage department.

46. In connection with the transfer Defendant required White to submit his fingerprints, and First Advantage prepared a consumer report on him.

47. According to Wells Fargo, the consumer report revealed a class six misdemeanor which, according to Wells Fargo, caused White to not only be turned down for the new position, but to be discharged from Wells Fargo effective March 21, 2002.

48. At no time did either Wells Fargo or First Advantage provide White with a copy of the consumer report, so he is unsure whether it was accurate or not.

49. White was informed by Wells Fargo that he would not get the position before he received any written correspondence from either Wells Fargo or First Advantage.

50. The report contained White's alleged criminal history, not information solely as to transactions or experiences between White and First Advantage or Wells Fargo.

51. Wells Fargo provided White with no prior warning before walking him off the premises.

52. White received a post-adverse action notice which referred to the fact that he should have previously received information regarding the consumer report from First Advantage, but he had not received any prior information from First Advantage.

53. Neither Defendant nor First Advantage provided White with at least five business days' written advance notice of the fact that White might not be hired for the new position at Wells Fargo based on the results of his consumer report.

54. Neither Defendant nor First Advantage provided White with a copy of his consumer report or a written summary of his FCRA rights at least five business days before deciding not to hire him based in whole or in part on the results of his consumer report.

55. Indeed, the supposed pre-adverse action letter never arrived, and the post adverse action letter did not include a copy of the consumer report or a written FCRA rights summary.

## FACTS COMMON TO ALL PLAINTIFFS

56. Defendant did not provide Plaintiffs with the pre-adverse action notice required by the FCRA, that is, a warning that due to the public record information obtained by the credit reporting agency, Plaintiffs might not be hired or retained by Defendant.

57. Defendant did not provide Plaintiffs with a copy of their consumer reports or written summary of their rights under the FCRA before informing Plaintiffs that they would not be hired or retained by Defendant.

58. Defendant did not provide a copy of the consumer report to Plaintiffs to allow Plaintiffs to discuss the report with it or otherwise respond before the adverse action.

59. Defendant failed to hire/discharged Plaintiffs without providing them with any advance notice of the adverse action, without providing them with a copy of their consumer reports, and without providing them with a written summary of their rights under the FCRA.

60. Upon information and belief, it is the standard hiring practice of Defendant to rely on consumer reports, and when the results are unsatisfactory, to fire or refuse to hire people on the spot without giving them proper, written advance notice of the adverse action, without first providing them with a copy of their consumer report, and without providing them with a summary of their rights under the FCRA before taking the adverse action.

61. The consumer report with respect to each of the Plaintiffs was obtained as a routine consumer report for employment purposes as opposed to in connection with suspected misconduct relating to employment or compliance with Federal, State or local laws and regulations, the rules of a self-regulatory organization, or any pre-existing written policies of the

employer.

62. To the extent that Defendant might argue that §1681a(y) applies, then Defendant failed to comply with that statute, and specifically sub-section (2) regarding White because it never provided him with a copy of his consumer report.

## **LEGAL REQUIREMENTS**

63. Section 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates –
>
> (i)  a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

64. The purpose of §1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies, to notify the prospective employer of these inaccuracies before an adverse action is taken and generally to discuss the report with the prospective employer.

## **DEFENDANT ACTED WILFULLY**

65. Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

66. Defendant obtained or had available substantial written materials which apprised it of its duties under the FCRA.

67. The written disclosure which precedes a written authorization for a prospective employer to obtain a consumer report for employment purposes must be presented in a clear, conspicuous, stand-alone form. *EEOC v. Video Only, Inc.*, 2008 WL 2433841 (D.Or.), *Reardon v. ClosetMaid Corporation*, 2007 U.S. Dist. LEXIS 45373.

68. Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.*, Civil Action No. 3:05cv853 (E.D.Va. 2006). Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006 adopted by Judge R. Payne January 8, 2005; (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement). *Kelchner v. Sycamore Manor Health Center*, 305 F.Supp.2d 429, 435 (M.D.Pa. 2004); etc. (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.* Civil Action No. 3:07cv469 (E.D.Va. 2009) (Consent Order providing ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the Preadverse Action Notices).

69. To ensure knowing compliance with the FCRA, Congress requires that before any

consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report. 15 U.S. C. § 1681b(b)(1)(A).

70. Upon information and belief, Defendant knowingly executed a certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

71. Despite its certification, Defendant knowingly violated 15 U.S.C. § 1681b(b)(3).

72. Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and depriving Plaintiffs and other members of the class of their rights under the FCRA.

73. As a result of these FCRA violations, Defendant is liable to Plaintiffs and to each FCRA Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2) for the violations alleged herein, and for attorney's fees and costs pursuant to §1681n and §1681o.

74. Plaintiffs and FCRA Class Members are entitled to equitable relief against Defendant requiring its compliance with the FCRA in all future instances, and enjoining their future violations of the FCRA.

75. In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

## CLASS ACTION ALLEGATIONS

76. Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of the "FCRA § 1681b(b)(3) Class" initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), who applied for an employment position with Defendant or any of its subsidiaries, and as part of this application process were the subject of a consumer report obtained by Defendant, (a.) against whom Defendant took an adverse employment action based in whole or in part on the report; (b.) and to whom Defendant did not provide a copy of the consumer report as stated at 15 U.S.C. § 1681b(b)(3)(A)(i) at least five business days before the date the employment decision is first noted in Defendant's records.

77. Plaintiffs also allege the following "FCRA § 1681b(b)(3) Sub-class", of which they are also members:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), who applied for an employment position with Defendant or any of its subsidiaries, and as part of this application process were the subject of a consumer report obtained by Defendant, (a.) against whom Defendant took an adverse employment action based in whole or in part on the report; (b.) and to whom Defendant did not provide a written summary of Fair Credit Reporting Act rights as stated at 15 U.S.C. § 1681b(b)(3)(A)(ii) at least five business days before the date the employment decision is first noted in Defendant's records.

78. **Numerosity.** Fed. R. Civ. P. 23(a)(1). Upon information and belief, Plaintiffs allege that the Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

79. **Existence and Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members.

These common legal and factual questions include, among other things:

      a.    Whether Defendant provided a copy of the consumer report to the applicant or employee at least five business days before declining to hire or discharging the applicant or employee based on the results thereof (§1681b(b)(3)(A)(i));

      b.    Whether Defendant provided a copy of a summary of the applicant or employee's rights under the FCRA before declining to hire or discharging the applicant or employee (§ 1681b(b)(3)(A)(ii));

      c.    Whether Defendant provided a copy of the most current written summary of FCRA rights to the applicant or employee;

      d.    Whether Defendant recklessly, knowingly or intentionally acted in conscious disregard of the rights of the consumer.

      e.    Whether Plaintiffs' claims are typical of the claims of each class member.

      f.    Whether Plaintiffs are adequate representatives of the class.

      g.    Whether questions of law and fact common to class members predominate over questions affecting only individual members.

      h.    Whether the class members could afford individual litigation.

      i.    Whether individual litigation would be an unnecessary burden on the Courts.

      j.    Whether individual litigation presents a potential for inconsistent or contradictory judgments.

      k.    Whether individual litigation increases the delay and expense to all parties.

80.    **Typicality.** Fed. R. Civ. P. 23(a)(3)). Plaintiffs' claims are typical of the claims of each Class member. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the Class.

81.    **Adequacy.** Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and

they intend to prosecute this action vigorously. Fed. R. Civ. P. 23(a(4). Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the Class.

82. **Superiority**. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case

## COUNT ONE: VIOLATION OF THE FCRA § 1681b(b)(3)(A)(i)

83. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

84. Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(i), as to the Class, because it failed to provide a copy of the consumer report used to make an employment decision to Plaintiffs and all other similarly situated applicants and employees before taking an adverse action that was based in whole or in part on the consumer report.

## COUNT TWO: VIOLATION OF THE FCRA § 1681b(b)(3)(A)(ii)

85. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

86. Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii), as to the Class, because it failed to provide Plaintiffs and all other similarly situated applicants and employees the summary of rights required by this section of the FCRA before taking an adverse action that was based in whole or in part on the consumer report.

WHEREFORE, Plaintiffs and the Class Members pray for relief as follows:

1. an order certifying the proposed FCRA class herein under Federal Rule 23 and appointing Plaintiffs and their undersigned counsel of record to represent same;

2. the creation of a common fund available to provide notice of and remedy Defendant's FCRA violations;

3. statutory and punitive damages;

4. injunctive relief as pled;

5. attorney's fees, expenses and costs;

6. pre-judgment and post-judgment interest as provided by law; and

7. such other relief the Court does deem just, equitable and proper.

TRIAL BY JURY IS DEMANDED.

TERRELL MANUEL AND
CHARLES E. WHITE,
For themselves and on behalf of all
similarly situated individuals.

Date: March 31, 2014                         By: _____
                                                            Of Counsel

Christopher Colt North
VSB #16955
Attorney for Plaintiff
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax:   (757) 873-8375
Email: cnorthlaw@aol.com