UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

TERRELL MANUEL,

and

CHARLES E. WHITE,

For themselves and on behalf of all
similarly situated individuals.

     Plaintiffs,

v.                                                      CIVIL ACTION NO.: 3:14-cv-238

WELLS FARGO BANK, NATIONAL ASSOCIATION.

     Defendant.

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED CLASS COMPLAINT

The Plaintiffs, Terrell Manuel and Charles E. White, on behalf of themselves and all similarly situated individuals have moved the Court for Leave to File a Third Amended Class Complaint based on documents recently produced by the Defendant in response to Plaintiffs' written discovery, which documents were uniquely within the possession of the Defendant, which had not been previously disclosed to the Plaintiffs, and which demonstrate additional violations of the Fair Credit Reporting Act. For good cause shown, Plaintiffs seek leave to file their Third Amended Class Complaint ("TACC") to add a new claim for violations of 15 U.S.C. § 1681b(b)(2). Defendant has declined to consent to this motion.

The recently produced documents include the disclosure and authorization forms used by Wells Fargo, which are used not only to inform job applicants about, but also to obtain consent from job applicants to procure an employment-purposed consumer report, or background check. The proposed TACC will add a claim for Defendant's violation of 15 U.S.C. § 1681b(b)(2)(A)(i)

and FCRA § 1681b(b)(2)(a)(ii) (providing that a person may not procure a consumer report for employment purposes unless a clear and conspicuous disclosure has been made in writing to the consumer only in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes) and 15 U.S.C. § 1681b(b)(2)(A)(ii) (the consumer has authorized in writing the procurement of the report by the employer). These new claims will be asserted on behalf of both of the existing Plaintiffs' proposed class representatives, and all similarly situated individuals.

I. **Procedural History**

On January 23, 2015, more than two months after discovery was served, the Defendant supplied certain documents in response to the Plaintiffs' written discovery, which had been served on November 21, 2014. After reviewing over 1200 pages, the Plaintiffs discovered that the Defendants had produced the written disclosure and authorization forms it used to obtain consent to conduct background checks on the Plaintiffs. The disclosure and authorization forms bear the First Advantage Background Services, Corp., logo and appear to be created by First Advantage, which is the background check company that performed and adjudicated the Wells Fargo employees' background checks.

Based on Plaintiffs' nearly contemporaneous depositions (February 4 and 5, 2015) of First Advantage fact witnesses in a companion case, *Henderson v. First Advantage Background Services Corp.*, 3:14CV221 (E.D. Va.), Plaintiffs learned from those witnesses that Wells Fargo used the same illegal disclosure and authorization form to uniformly obtain the background checks of its current and prospective employees. All of the disclosure and authorization forms used by Wells Fargo and created by First Advantage contain an illegal liability waiver. This court and others have found that such an authorization form that purports to waive a consumer's

FCRA rights violates the Fair Credit Reporting Act because it not only contains extraneous language, but the extraneous language is a waiver of the rights that the disclosure and authorization are designed to protect. And, now, Plaintiffs have discovered evidence that Wells Fargo uniformly used an illegal disclosure and authorization form for all employees and prospective employees for whom it obtained a background check from First Advantage.

Plaintiffs immediately requested the Defendant's consent to file a third amended complaint. After several weeks of discussion on the matter, the Defendant ultimately refused to consent to the filing of the Amended Complaint.

This class action was initially filed on April 1, 2014. On September 10, 2014, the Court entered a scheduling order requiring amendments to the pleadings be filed within 15 days. (Doc. 14). Otherwise, only upon a showing of good cause would further amendment to a pleading be entertained. The Plaintiffs filed their First Amended Class Complaint on September 15, 2014. Shortly thereafter, the Court entered another scheduling order allowing for the filing of a Second Amended Class Complaint, which Plaintiffs filed on October 20, 2014, and which was unopposed by Defendant. The Defendant answered the Second Amended Class Complaint on November 3, 2014. Thus, this will be the third complaint to which Defendant will have to respond.

The initial pre-trial conference was held October 15, 2014, at which time the Court entered a Scheduling Order. Even thought the parties agreed to exchange mandatory disclosures under Fed. Rule Civ. P. 26(a)(1) on November 12, 2014, Defendant refused Plaintiffs' request to produce the documents that it had identified in its disclosure. Despite Plaintiffs' request to permit the inspection, and that Plaintiffs produced its own documents, Defendant rested on Fed. R. Civ. P. 26(a)(1)(A)(ii), requiring only a description by category and location of documents.

Shortly thereafter, the parties propounded written discovery, which is still ongoing, and wherein the Plaintiff requested all documents identified in Defendant's mandatory disclosures. The written discovery was due December 24, 2014, but due to the holidays the parties agreed to extend the time to respond to written discovery until December 30, 2014. The parties met and conferred by telephone on several occasions regarding discovery, and on Friday evening, January 23, 2015, Defendant provided written responses including document production just days before depositions of Defendant's fact witnesses were to take place on Monday morning, January 26, 2-15. The meet and confer process continues.

Thus, Plaintiffs had received no documents at all from the Defendants until they responded to the written request for production, which included the form that Plaintiffs allege violates the FCRA. This was the first time the Plaintiffs counsel had seen the disclosure because the named Plaintiffs were never provided with a copy of the disclosure and authorization when they applied for their jobs at Wells Fargo.

Shortly after the Plaintiffs identified the offending documents from among the documents produced in discovery, Plaintiffs' counsel informed Defense counsel of the need to amend the Complaint to include violations of the § 1681b(b)(2)(A)(i) and § 1681b(b)(2)(a)(ii). At that time, Defendant's counsel insisted that Plaintiffs had possession of such documents, and in fact, had already produced such documents to Defendant as part of Plaintiffs' mandatory disclosures. Plaintiffs made an exhaustive search of its disclosures, documents, physical and network files, at which time Plaintiffs' counsel confirmed that it had never had possession, nor had ever produced such documents. Defendant confirmed that it had never received the documents from Plaintiffs. If Plaintiffs had such documents at the inception of the case, the § 1681b(b)(2)(A)(i) and § 1681b(b)(2)(a)(ii) would have been part of the original Complaint.

Discovery has not closed, no trial date has been set, and the documents upon which the proposed amendments to the complaint are based were uniquely within the exclusive possession of the Defendant. The Scheduling Order requires a showing of good cause to allow for the amendment of the pleadings, which good cause exists in this case.

## II. Argument

### A. Standard of Review

Generally, leave to amend a complaint should be freely given when justice so requires pursuant to Fed. R. Civ. P. 15(a). *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Supreme Court has noted that "this mandate is to be heeded." After a scheduling order has been entered and deadlines are established, the Fourth Circuit has instructed that the "good cause" standard of Rule 16(b) applies rather than the more permissive standard of Rule 15(a). *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 299 (4th Cir. 2008). This court has reasoned that the analytical approach under either the "interest of justice" or the more stringent "good cause" standard is essentially the same. *Smithfield Foods, Inc. v. United Food & Comm'l Workers Int'l Union, et al.*, 254 F.R.D. 274, 278 (E.D. Va. Oct. 21, 2008).

### B. Argument

#### 1. Whether the Amendment would prejudice Wells Fargo

This court has reasoned that it is axiomatic that almost every amendment to a complaint results in some prejudice to the defendant, but the relevant test is whether it amounts to undue prejudice. *Id*. In this case, the addition of a cause of action based on new evidence does not prejudice the Defendant in asserting any claim or defense of the existing claims. However, factors a court should consider are whether the amendment requires the opposing party to engage in significant new preparation, added expense, and the burden of a more complicated and lengthy

trial. *Id*., citing *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997). The further along that a case has progressed, the court may find prejudice to the non-moving party or that the proponent of the amendment has acted in bad faith. *Id*., citing *Laber v. Harvey,* 438 F.3d. 404, 427 (4th Cir. 2006). Whether the Plaintiffs have acted in good faith and whether they have engaged in undue delay are relevant and guiding inquiries. *Id*.

In this case, the documents upon which the Plaintiffs base the amendment were within the exclusive possession of the Defendant, were never in the Plaintiffs' possession and were not provided to the Plaintiffs until January 23, 2015. Within a few days after reviewing the documents, the Plaintiffs contacted Defendant to notify them of the claims based on its document production and to request consent to file an amended complaint. The Plaintiffs have demonstrated they acted without delay to swiftly to contact the Defendant to apprise it of the claim evident in the documents. The Plaintiffs have filed this motion for leave to amend within a week of being informed that the Defendant declined to consent to the Third Amended Class Complaint.

The Defendant has known since the inception of the case the contents of its disclosure and authorization form, while the Plaintiffs just learned about it for the first time a month ago. The Plaintiffs in good faith have sought to meet and confer with the Defendants, not only about discovery, but also seeking their consent to the Third Amended Class Complaint. The Plaintiffs have not been mum, engaged in gamesmanship or attempted to withhold information in order to spring a Third Amended Class Complaint upon the Defendant. To the contrary, the Plaintiffs have actively been engaging Defendant before and after learning of the illegal disclosure and authorization.

    **2.**    **Undue delay**

There is no question that this request for leave is timely made without any delay. Plaintiffs learned of the facts and additional causes of action alleged in the Third Amended Class Complaint and immediately set about to seek the Defendants consent. The new cause of action is based only on newly-discovered evidence. Delay, if any, has been occasioned by the Defendant and not by the Plaintiffs. Discovery has not closed nor has a trial date been set. These factors all militate in favor of allowing the amendment. Because the Defendant has been in possession of the evidence since the inception of the case, or at least has known about it since the requests for production were made, it cannot assert prejudice when it has been knowledgeable of its potential liability under § 1681b(b)(2). Additional discovery will be required, including to demonstrate willfulness, but because the trial date has not been set and discovery has not yet closed, additional discovery will not adversely impact the trial of this case.

**3.    Futility**

Leave to amend may be denied if the proposed amendment would be futile, but only if the amendment is facially insufficient as a matter of law. *Id*., citing *Gallegos v. Brandeis Sch*., 189 F.R.D. 256, 258 (E.D.N.Y. 1999). In this case, Wells Fargo's extraneous language and a liability waiver in the disclosure and authorization form has been firmly established as an FCRA violation. The proposed Third Amended Complaint alleges that:

> The disclosure used by Defendant and signed by Plaintiff was buried in an application and contained unnecessary additional language, including a purported release of Plaintiff's FCRA rights and thus was not contained in a stand alone document consisting solely of the disclosure.

TACC, ¶ 83. These facts allege a violation of 15 U.S.C. § 1681b(b)(2).

Section 1681b(b)(2) provides in pertinent part:

> Except as provided in subparagraph (B) . . . a *person* may not *procure* a *consumer report,* or cause a consumer report to be procured*, for employment purposes* with respect to any consumer*, unles*s -

> (i) *a clear and conspicuous disclosure has been made in writing to the consumer* at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) *the consumer has authorized in writing* (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

(emphasis supplied). Section 1681b(b)(2) contains terms of art, such as the term "clear and conspicuous disclosure," which is in other parts of FCRA as well as the Truth In Lending Act. This term is construed to mean the disclosure must be "in a reasonably understandable form and readily noticeable to the consumer." *Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384, 390 (3d Cir. 2002). *See also Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007)(defining "clearly" as used in FCRA).

In *Singleton v. Domino's Pizza, LLC*, CIV.A. DKC 11-1823, 2012 WL 245965 (D. Md. Jan. 25, 2012), the Court directly addressed the meaning of the term "solely" as used in § 1681b(b)(2) and found it meant "to the exclusion of all else":

> Here, dictionary definitions of the word "solely" indicate that a document disclosing that an employer planned to obtain a consumer report would not "consist[ ] solely of the disclosure" if the document also contained a liability release. 15 U.S.C. § 1681b(b) (2)(A)(i). These definitions define "solely" as, *inter alia,* "to the exclusion of all else." *Merriam Webster Online Dictionary* (2011), *available at* http://www.merriam-webster.com; *see also Oxford English Dictionary Online* (2012) (defining "solely" as "alone" or "without any other as an associate"), *available at* http://www.oed.com; *Webster's Third New Int'l Dictionary of the English Language* 2168 (3d ed.1971) (defining "solely" as "to the exclusion of alternate or competing things").

Finally, the term "authorized" used in § 1681b(b)(2) means "marked by authority ... [or] sanctioned by authority" *Webster's Third New International Dictionary.* "Authorize" means "to endorse, empower, justify, or permit by or as if by some recognized or proper authority" or "[t]o give permission for ... [or to] sanction." *Webster's Third New International Dictionary; The*

*American Heritage Dictionary. See e.g. Russell v. ChoicePoint Servs., Inc.*, 300 F. Supp. 2d 450, 456 (E.D. La. 2004).

An apparent and unambiguous meaning of § 1681b(b)(2) can thus be simply discerned from these basic definitions. Any employer who intends to obtain a "consumer report" for "employment purposes" about any "consumer" must make (a.) "a reasonably understandable and readily noticeable disclosure" to the consumer about the intention to obtain that report; and (b.) must to the "exclusion of all" else – all other information other than the FCRA disclosure. By using the plain and unambiguous language, "in a document that consists solely of the disclosure," § 1681b(b)(2) clearly prohibits both the use of the use of a waiver or release of rights.

Both the courts and the FTC have recognized that the inclusion of a waiver of rights provision in the FCRA mandated Disclosure/Consent form violates § 1681b(b)(2)(A)(i) and (ii). *See Reardon v. ClosetMaid Corp.*, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013); *Avila v. NOW Health Grp., Inc.*, 2014 WL 3537825 (N.D. Ill. July 17, 2014); *Singleton v. Domino's Pizza, LLC*, 2012 WL 245965 (D. Md. Jan. 25, 2012); Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div., 1998 WL 34323756 (F.T.C. June 12, 1998); Letter from William Haynes, Fed. Trade Comm' n, to Harold R. Hawkey, Employers Assoc. of New Jersey, 1997 WL 33791224 (F.T.C. December 18, 1997); Letter from Clarke W. Brinckerhoff, Fed. Trade Comm' n, to H. Roman Leathers, Manier & Herod, 1998 WL 34323725 (F.T.C. Sept. 9, 1998).

The Federal Trade Commission long ago established its position that inclusion of waiver of rights or release of claims provision violates § 1681b(b)(2)'s "stand alone" requirement. For example, in a June 12, 1998 advisory letter[1], F.T.C. staff wrote:

> While we believe that you may combine the disclosure and authorization (and include identifying information) as you have in the draft form that you included with your letter, we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist 'solely" of the disclosure that a consumer report may be obtained for employment purposes. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result. Brooklyn Savings Bank v. O'Neill, 324 U.S. 697 (1945). We note that no authorization for a waiver is contained in the FCRA; nor does the legislative history show that Congress intended that consumers should be able to sign away their legal rights under the Act.[1] Accordingly, employers and other users of information covered by the FCRA may not require consumers to waive their rights under the law.

*Hauxwell*, 1998 WL 34323756. Shortly thereafter, F.T.C. staff again explained,

> The disclosure may not be part of an employment application, because the language you quote is intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure. A disclosure that is combined with many items in an employment application -- no matter how 'prominently" it appears -- is not 'in a document that consists solely of the disclosure" as required by Section 604(b)(2)(A).

Hawkey, 1998 WL 34323725. *See also* Leathers, 1998 WL 34323725 ("Nothing else may appear on the document that detracts from the disclosure required by Section 604(b)(2)(A).") More recently, the F.T.C. again cautioned, "[T]he notice may not include extraneous or contradictory information, such as a request for a consumer's waiver of his or her rights under the

---

[1] As this Court recognized, "The FTC provides Official Staff Commentary, as well as informal staff opinion letters guiding interpretation of the FCRA. Congress has granted the FTC the authority to prescribe trade regulation rules and other rules in relation to the FCRA. Pub.L. No. 106–102, 113 Stat. 1338 (Nov. 12, 1999)." *Williams v. Telespectrum, Inc.*, 3:05CV853, 2006 WL 7067107 (E.D. Va. Nov. 7, 2006).

FCRA." 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, Federal Trade Commission, 2011 WL 3020575 (F.T.C.), July 2011.[2]

Similarly, those federal courts that have considered the text of the statute – and respectfully, all of those courts that have provided as substantive analysis of the provision – have uniformly held that a disclosure and authorization that contains a waiver of rights violates the FCRA. In *Singleton,* the defendant home delivery pizza company used an FCRA mandated Disclosure/Consent form that was virtually identical that used by ClosetMaid. *Singleton*, 2012 WL 245965 at*1. Initially, the form disclosed to the applicant the nature and scope of the report that was to be procured. *Id.* The form also incorporated a waiver of rights provision before the part of the document that was signed by the applicant. *Id.* The *Singleton* court found that the inclusion of the release violated both § 1681b(b)(2)(i) and (ii). *Id.* The court also recognized that the FTC had addressed the issues in the staff opinion letters upon the same reasoning and found that the practice violated the Act:

> In addition to the statutory text, FTC interpretations of § 1681b(b)(2) suggest that inclusion of a liability release in a disclosure form violates the FCRA.

*Id.*

More recently, in *Reardon v. ClosetMaid Corp.*, the court granted the consumer plaintiff summary judgment, finding that the inclusion of a waiver of rights provision willfully violates the FCRA as a matter of law. The Court explained:

> [T]he Court agrees with the analysis in *Singleton,* <u>given the rather direct statutory language at issue</u>. Specifically, ClosetMaid's inclusion of a release provision in the Authorization Form, which served as a combined disclosure and authorization form for those Disclosure Class members who did *not* receive a Notice Form as part of their employment application, facially violates section 1681b(b)(2)(A)(i).

---

[2] Also found at http://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf last viewed October 27, 2014

> Although the disclosure itself is arguably "clear and conspicuous" given that the title of the Authorization Form appears in bold capital letters and explains that the consumer report is for employment purposes, the Authorization Form simply does not comply with the FCRA's express requirement that the disclosure appear in a document that consists solely of the disclosure (or, at most, a disclosure and authorization only). Even if the Court were to accept ClosetMaid's characterization of the waiver of rights provision as being narrowly tailored to ClosetMaid's procurement of the applicant's authorization for the consumer report, and not a "great distraction", the release verbiage still is not an "authorization," which is the only other provision the FCRA allows in a valid disclosure form. To hold otherwise would have the Court rewrite the applicable provision of the FCRA to include a "not a great distraction" safe harbor for impermissible language, which, of course, it may not do. If that is to be done, it is a job for Congress.

*Reardon v. ClosetMaid Corp.*, 2:08-CV-01730, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013) (emphasis added). *See also Avila v. NOW Health Grp., Inc.*, 14 C 1551, 2014 WL 3537825 (N.D. Ill. July 17, 2014) ("Thus, despite NOW's assertion that both forms comply with the FCRA stand alone disclosure requirement, each form contains information that is not the disclosure, contrary to the express language of the FCRA, which requires a disclosure 'in a document that consists solely of the disclosure.' ").

Section 1681b(b)(2)(A)(i) unambiguously provides that a prospective employer is not permitted to procure a consumer report for employment purposes *unless* a clear and conspicuous disclosure is first made notifying the applicant that a consumer report will be procured *in a document that consists solely of the disclosure*.

A reasonable person knows that a provision that purports to prospectively release or waive FCRA rights conferred on consumers contravenes the statutory policy. *See Brooklyn Sav.Bank v. O'Neill,* 324 U.S. 697, 704 (1945); *Alexander v. Gardner-Denver,* 415 U.S. 36, 51 (1974); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)("We merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust

violations, we would have little hesitation in condemning the agreement as against public policy."). *See Parker v. DeKalp Chrysler,* 673 F.2d 1178 (11th Cir. 1982)(release of prospective TILA claims in contract prohibited) and *Abercrombie v. Wells Fargo Bank,* 417 F.Supp.2d 1006, 1007 (2006). Here, Wells Fargo was seeking to absolve itself from future FCRA liability by obtaining a release or waiver when a consumer authorizes Wells Fargo to procure a consumer report. Such a provision that would effectively encourage future violations of the law is prohibited. *Brooklyn Savings Bank v. O'Neil,* 324 U.S. at 710 ("[C]ourts have uniformly held that contracts tending to encourage violation of laws are void as contrary to public policy." *Redel's Inc. v. G.E..*, 498 F.2d 95, 99 (5th Cir. 1974).

Thus, the proposed amendment to add a § 1681b(b)(2) claim is well-supported in the FCRA jurisprudence and would not be futile.

### III. Conclusion

For good cause shown, the Court should grant Plaintiffs' Motion for Leave to File a Third Amended Class Complaint.

                                              Respectfully submitted,

                                              **TERRELL MANUEL and CHARLES E. WHITE, For themselves and on behalf of all similarly situated individuals.**

                                              _____/s/_____
Leonard Anthony Bennett (VSB# 37523)
Susan Mary Rotkis (VSB# 40693)
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Telephone: (757) 930-3660

Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

Christopher Colt North, Esq. (VSB #16955)
William L. Downing, Esq, (VSB #17704)
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Telephone: (757) 873-1010
Facsimile: (757) 873-8375
Email: cnorthlaw@aol.com and
Email: wdowninglaw@aol.com

Matthew Anderson Dooley (appearing pro hac vice)
Anthony R. Pecora (appearing pro hac vice)
O'Toole McLaughlin Dooley & Pecora Co. LPA
5455 Detroit Road
Sheffield Village, OH 44054
Telephone: (440) 930-4017
Facsimile: (440) 934-7208
Email: mdooley@omdplaw.com
Email: apecora@omdplaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of February 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

Jimmy F. Robinson, Jr., Esq.
J. Clay Rollins, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
901 East Byrd St., Ste. 1300
Riverfront Plaza, West Tower
Phone: (804) 663-2336
Fax: (804) 225-8641
E-mail: jimmy.robinson@ogletreedeakins.com
         Clay.rollins@ogletreedeakins.com
*Attorneys for the Defendant*

                                                            /s/
                                     Susan Mary Rotkis (VSB# 40693)
                                     Consumer Litigation Associates P.C.
                                     763 J Clyde Morris Boulevard, Suite 1A
                                     Newport News, VA 23601
                                     Telephone: (757) 930-3660
                                     Facsimile:  (757) 930-3662
                                     Email: srotkis@clalegal.com