## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

**TERRELL MANUEL,**

**and**

**CHARLES E. WHITE,**

**For themselves and on behalf of all
similarly situated individuals.**

                **Plaintiffs,**                        **CIVIL ACTION NO.: 3:14cv238**

    **v.**

**WELLS FARGO BANK, NATIONAL ASSOCIATION,**

        **Defendant.**

### THIRD AMENDED CLASS COMPLAINT

COME NOW, the Plaintiffs, Terrell Manuel and Charles E. White, on behalf of themselves and all similarly situated individuals and allege the following claims:

### INTRODUCTION

1.    This action is brought under the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, et seq. The FCRA imposes on employers that use a background check or other consumer report regarding an employee or job applicant several important procedural requirements designed to protect consumers like Plaintiffs.

2.    Plaintiffs each applied for a job at Wells Fargo Bank, N.A. ("Wells Fargo"), and each Plaintiff was hired by Wells Fargo.  After hiring the Plaintiffs, Defendant obtained Plaintiffs' background checks, which are consumer reports, from First Advantage Background Services Corp., which is a consumer reporting agency.  Thereafter, Defendants used the Plaintiffs' consumer reports to make an adverse employment decision to terminate the Plaintiffs

from their employment.  In doing so, Defendant failed to comply with the procedural protections and requirements imposed on it by the FCRA.

3.      Specifically, Defendant (i) failed to provide a clear and conspicuous written disclosure in a document that consists solely of the disclosure to Plaintiffs that a consumer report may be obtained for employment purposes; (ii) failed to obtain a valid authorization in writing to procure a consumer report for employment purposes from Plaintiffs; (iii) failed to provide Plaintiffs with a copy of the consumer report upon which it based its decision either in whole or in part, and (iv) failed to provide Plaintiffs with a written summary of their FCRA rights prior to taking adverse employment action against them.

## JURISDICTION/VENUE

4.      The Court has jurisdiction under the FCRA, 15 U.S.C. §1681p and 28 U.S.C. §1331.

5.      Plaintiff, Terrell Manuel, resides within this District of the Court.

6.      Defendant is doing business and maintains the office of its registered agent in Richmond, Virginia, which is in this District and Division.

7.      Defendant maintains its records electronically and, therefore, has access to them in this District and Division.

## PARTIES

8.      Terrell Manuel (hereinafter "Manuel") is a natural person and a "consumer" as defined in the FCRA.

9.      Charles E. White (hereinafter "White") is a natural person and a "consumer" as defined in the FCRA.

10.     Defendant Wells Fargo Bank, National Association   ("Wells Fargo") is a bank

with its principal place of business in San Francisco, California, and that is registered with the Virginia Corporation Commission.  It is a provider of banking, mortgage, investing, credit card, insurance, and consumer and commercial financial services.

11.    At all times relevant hereto, Wells Fargo was a "user" of the consumer reports of Plaintiffs and all putative class members, as governed by the FCRA.

## UNNAMED PARTIES

12.    First Advantage Background Services Corp. ("First Advantage") supplied to Defendant the consumer reports about the Plaintiffs.

13.    First Advantage was and is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f).

14.    First Advantage was and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties.

15.    First Advantage is not related by common ownership or affiliated by corporate control with Defendant.

16.    The consumer reports were provided by First Advantage to Wells Fargo, not communicated among persons related by common ownership or affiliated by corporate control.

## FACTS AS TO MANUEL

17.    In February 2012, Manuel applied for a job with Wells Fargo.

18.    On February 9, 2012, Manuel interviewed with a Wells Fargo recruiter.

19.    The following week Manuel interviewed with an individual at a Wells Fargo branch.

20.     On February 24, 2012, Wells Fargo offered Manuel a position at the branch where he had his immediately preceding interview.

21.     Defendant provided Manuel with an offer letter dated February 24, 2012, and asked him to sign and return it if he was interested in the position.

22.     Manuel signed the offer letter on February 27, 2012, and immediately returned it to Wells Fargo.

23.     Wells Fargo used (and uses) third party First Advantage to generate its consumer reports, obtain consumer authorization for such reports as required under 15 U.S.C. § 1681b(b)(2), disclose the intended use of such reports pursuant to the same section and to provide the notice required under 15 U.S.C. §§1681b(b)(3) and 1681m.

24.     During the relevant class period and as to both named Plaintiffs, Wells Fargo relied entirely upon First Advantage for the notice and authorization form otherwise mandated by 15 U.S.C. § 1681b(b)(2).  Specifically, it was Wells Fargo's standard policy to refer new applicants to the First Advantage website or portal where the consumer was required to authorize the use of his or her First Advantage report using an electronic version of First Advantage's standard form.

25.     First Advantage's standard FCRA form did not comply with 15 U.S.C. § 1681b(b)(2).  It contained a release of liability clause and thus was not a stand-alone document consisting only of the FCRA disclosure and authorization.

26.     Notwithstanding this failure, on or about February 29, 2012, Wells Fargo ordered for purchase an employment-purposed background check about Manuel from First Advantage. The report that Wells Fargo ordered and purchased from First Advantage was a routine background check that contained a host of information unrelated to the parties and the Plaintiff's

4

performance as an employee in this case.  It was not a report used in connection with an investigation of the Plaintiff regarding Wells Fargo and/or First Advantage.

27.     As March 13, 2012 approached, Manuel still did not know exactly where to report for work, nor had he signed any additional employment related papers.  Manuel sent emails to his contacts at Defendant to no avail.

28.     Later, Manuel called the recruiter from Wells Fargo, and she informed Manuel that Defendant was waiting on the results of Manuel's background report. The recruiter also informed Manuel that she could not talk about his background report results with him and Defendant referred Manuel to the background check company, First Advantage.

29.     Manuel called First Advantage and was informed that it was waiting for additional information.

30.     Upon information and belief, First Advantage completed the consumer report on Monday, April 2, 2012, and determined that Mr. Manuel could not be hired under Wells Fargo's existing requirements based on his consumer report.  First Advantage immediately conveyed the information in the report and the adverse action decision to Wells Fargo, but did not notify Mr. Manuel about the derogatory report at the time it was reported to Wells Fargo.

31.     On Tuesday, April 3, 2012, the recruiter for Wells Fargo told Manuel that the report had been completed and the result disqualified Manuel for employment at Wells Fargo. Upon information and belief, Wells Fargo's decision did not involve any human discretion, but was rendered on April 2, 2012, when First Advantage determined that the criminal history it had compiled required Mr. Manuel's termination.

32.     During the class period as to Plaintiffs and each class member, First Advantage claims that the standard procedure followed by Wells Fargo and First Advantage was to send a

notice to the consumer applicant immediately upon completing the disqualifying report, and then again automatically 5 days later.  This is an automatic process and does not require any further discretion or action after the first notice is sent to reject or keep terminated the subject application.

33.     Later in April, Manuel received a copy of a "pre-adverse action notification" and a copy of his consumer report which was signed "Wells Fargo," but which Mr. Manuel does not know if it was sent by Wells Fargo or First Advantage.

34.     The letter was dated April 3, 2012, but Manuel does not know when the sender put the letter in the mail.

35.     The consumer report supplied by First Advantage about Mr. Manuel to Wells Fargo contained a criminal history that belonged to a complete stranger in New Jersey, including several felony and misdemeanor charges and convictions.

36.     The background report erroneously attributed to Mr. Manuel included numerous dismissed charges in New Jersey that belonged to a person with the same first name, same last name, and same date of birth.  However, the report indicated that the criminal charges and convictions belonged to an individual who was white.  Mr. Manuel is black.

37.     Although the charges were about a complete stranger and had been dismissed, they were serious charges such as unlawful weapons possession, robbery, burglary, terroristic threats, threats to kill, domestic violence and kidnapping.

38.     The background report erroneously attributed to Mr. Manuel also included numerous convictions for both felony and misdemeanor offenses such as aggravated assault, unlawful weapons possession, obstruction of justice, theft by deception, and failure to pay fines for which bench warrants had been issued.

39.     Neither Wells Fargo nor First Advantage provided Manuel with at least five business days' written advance notice of the fact that Manuel it would might take adverse action against him such as firing or not hiring him based on the results of his consumer report.

40.     Neither Wells Fargo nor First Advantage provided Manuel with a copy of his consumer report or a written summary of his FCRA rights at least five business days before taking the adverse action by firing or not hiring him based in whole or in part on the results of his consumer report.

## FACTS AS TO WHITE

41.     Mr. White was hired by Wells Fargo in 2008.

42.      Mr. White had been working for Wells Fargo for four years at the time Wells Fargo transferred him to its mortgage department in February 2012.

43.     Before White joined Wells Fargo in 2008 he authorized a background check and informed Wells Fargo about his misdemeanor convictions arising in 1994 and 1995 respectively.

44.     Before White joined Wells Fargo in 2008, Wells Fargo, upon information and belief, ordered, received and reviewed the consumer report that White authorized and also evaluated what he told Wells Fargo about his two misdemeanor convictions.

45.     In connection with the transfer from one Wells Fargo department to another, which began in February 2012, Defendant required White to submit his fingerprints and to authorize a consumer report.

46.     First Advantage prepared an employment-purposed consumer report about White dated March 16, 2012, which report it delivered contemporaneously to Wells Fargo. It was on March 16, 2012, that First Advantage determined that Mr. White was ineligible for employment

based on Wells Fargo's criteria. It is also the date on which Wells Fargo made the decision not only to rescind Mr. White's transfer, but also to terminate his employment.

47.     White met with a Wells Faro Human Resources manager about the consumer report on March 21, 2012.

48.     According to the Human Resources representative, his consumer report revealed felony charges, which according to her, caused White to not only be turned down for the new position, but to be discharged from Wells Fargo immediately on March 21, 2012.

49.     The First Advantage consumer report referred to three felony charges that had been dismissed more than seven years before the date of the report (August 1994 versus March 2012).

50.     Wells Fargo provided White with no prior warning whatsoever before firing him and walking him off its business premises March 21, 2012.

51.     On or about March 23, 2012, White received a letter dated March 21, 2012 from Wells Fargo stating that as a result of the background screening, White was ineligible for employment with Wells Fargo.

52.     The letter also referred to "our conversation on March 21, 2012" which was the conversation between White and the Human Resources representative about the background report, which immediately led to Wells Fargo firing White.

53.     Also on or about March 23, 2012, White received a letter dated March 20, 2012, purportedly from Wells Fargo.

54.     The March 20, 2012, letter, which upon information and belief, actually came from First Advantage, suggested that a decision was currently pending concerning White's application for employment.

55.     The March 20, 2012, letter included a copy of the consumer report provided by First Advantage to Wells Fargo and a written summary of White's FCRA rights.

56.     By the time White received the documents contained with the March 20, 2012 letter he had already been discharged by Wells Fargo and walked off its business premises.

57.     The consumer report contained White's alleged criminal history, not information solely as to transactions or experiences between White and First Advantage or Wells Fargo.

58.     White's criminal record did not change while Wells Fargo employed him between 2008 and 2012.

59.     Subsequently, White received a letter dated March 27, 2012, which purported to be from Wells Fargo but which, upon information and belief, was a post adverse action notification provided by First Advantage to White.

60.     The March 27, 2012, letter said that the decision not to consider White further for employment at Wells Fargo was based in part on information contained in the consumer report First Advantage provided to Wells Fargo.

61.     As of March 27, 2012, White's employment with Wells Fargo already had been terminated six days earlier when he was walked off the premises.

62.     Neither Defendant nor First Advantage provided White with a copy of his consumer report at least five business days' before deciding not to transfer him to the new position in the mortgage department and to fire him from his then-existing position based in whole or in part on the results of his consumer report.

63.     Neither Defendant nor First Advantage provided White with a written summary of his FCRA rights at least five business days before deciding not to transfer him to the new

position in the mortgage department and to fire him from his then existing position based in whole or in part on the results of his consumer report.

64.     In January 2013, White received notice of the *Henderson v. Verifications, Inc.*, 3:11cv514 (E.D.Va.) Class Action, then-pending in this Court.

65.     The *Henderson* Class Action Notice referred to violations of the FCRA by Verifications, Inc., including dissemination of inaccurate employment background information to prospective employers.

66.     On or about February 11, 2013, White filed a claim in the Verifications, Inc. class action.

67.     In January 2014, while speaking with class counsel about the *Verifications* class action, White also mentioned his experience with Wells Fargo. During that conversation White first discovered that Wells Fargo failed to comply with the FCRA concerning the decision not to retain him.

## ALLEGATIONS REGARDING THE DEFENDANT'S PRACTICES

68.     Wells Fargo uses the First Advantage portal and FCRA disclosure form during its hiring process.  However, the disclosure does not comply with the FCRA.

69.     Instead of being a clear and conspicuous disclosure contained in a stand-alone document consisting only of the disclosure, the Defendant's form conveys additional information including a purported prospective release of FCRA liability and a waiver of FCRA rights.

70.     Defendant routinely obtains background checks on its job applicants as part of its standard hiring process pursuant to the aforesaid disclosure.

71.     Because the disclosure fails to comply with the FCRA, then the written authorizations to obtain background checks are void.

72.     Thus Defendant routinely obtains background checks for employment purposes without the written authorization to do so as required by the FCRA.

73.     Defendant does not perform the background checks in-house.

74.     Defendant did not provide Plaintiffs with a copy of their consumer reports before informing them that they would not be hired or retained by Defendant.

75.     Defendant did not provide Plaintiffs with a written summary of their FCRA rights before informing them that they would not be hired or retained by Defendant.

76.     Defendant did not provide a copy of the consumer report to Plaintiffs to allow Plaintiffs to discuss the report with it or otherwise respond before the adverse action.

77.     Defendant failed to hire/discharged Plaintiffs without providing them with any advance notice of the adverse action.

78.     Upon information and belief, it is the standard hiring practice of Defendant to rely on consumer reports, and when the results are unsatisfactory, to fire or refuse to hire people on the spot without giving them proper, written advance notice of the adverse action, without first providing them with a copy of their consumer report, and without providing them with a summary of their rights under the FCRA before taking the adverse action.

79.     The consumer report with respect to each of the Plaintiffs was obtained as a routine consumer report for employment purposes, and not in connection with *any investigation of* suspected misconduct relating to employment or *any investigation of* compliance with Federal, State or local laws and regulations, the rules of a self-regulatory organization, or any pre-existing written policies of the employer.

80.     To the extent that Defendant might argue that §1681a(y) applies, then Defendant failed to comply with that statute, and specifically sub-section (2) regarding White and similarly

situated individuals because it never provided him with a copy of his consumer report.

## LEGAL REQUIREMENTS

81.     Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who obtain

a "consumer report" about employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –
>
>> (i)      a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>>
>> (ii)     the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

82.     The FCRA requires that the disclosure be "in writing" in a stand-alone document.

83.     The disclosure used by Defendant and signed by Plaintiff was buried in an

application and contained unnecessary additional language, including a purported release of

Plaintiff's FCRA rights and thus was not contained in a stand alone document consisting solely

of the disclosure.

84.     As a result of its defective disclosure, Defendant procured a consumer report for

Plaintiff and those similarly situated for employment purposes without first obtaining a proper,

written authorization to do so.

85.     Upon information and belief, it is Defendant's standard hiring practice to use a

wordy disclosure which is not contained in a stand alone document consisting solely of the

disclosure.

86.     Additionally, §1681b(b)(3)(A) of the FCRA regulates the conduct of any person

who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates –
>
> (i)     a copy of the report; and
>
> (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

87.     The purpose of §1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies, to notify the prospective employer of these inaccuracies before an adverse action is taken and generally to discuss the report with the prospective employer.

## DEFENDANT ACTED WILFULLY

88.     Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

89.     Defendant obtained or had available substantial written materials, which apprised it of its duties under the FCRA.

90.     The written disclosure that precedes a written authorization for a prospective employer to obtain a consumer report for employment purposes must be presented in a clear, conspicuous, stand-alone form. *EEOC v. Video Only, Inc.*, 2008 WL 2433841 (D.Or.), *Reardon v. ClosetMaid Corporation*, 2007 U.S. Dist. LEXIS 45373.

91.     Before a person takes an adverse employment action, it must provide two

documents to the prospective employee.  *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.,* Civil Action No. 3:05cv853 (E.D.Va. 2006).   Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005; (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement).  *Kelchner v. Sycamore Manor Health Center,* 305 F.Supp.2d 429, 435 (M.D.Pa. 2004); etc. (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.* Civil Action No. 3:07cv469 (E.D.Va. 2009) (Consent Order providing ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the Pre-adverse Action Notices).

92.    To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report.  15 U. S. C. § 1681b(b)(1)(A).

93.    Upon information and belief, Defendant knowingly executed a certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a

consumer report.

94.     Despite its certification, Defendant knowingly violated 15 U.S.C. § 1681b(b)(3).

95.     Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and depriving Plaintiffs and other members of the class of their rights under the FCRA.

96.     As a result of these FCRA violations, Defendant is liable to Plaintiffs and to each FCRA Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2) for the violations alleged herein, and for attorney's fees and costs pursuant to §1681n and §1681o.

97.     In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that question and appropriate remedy, if any, under 15 U.S.C. §1681o.

## COUNT ONE: VIOLATION OF THE FCRA §1681b(b)(2)(A)

98.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

99.     Plaintiffs bring this action on behalf of the following Class, of which they are members:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), who applied for an employment position with Defendant or any of their subsidiaries within the five years immediately preceding the filing of the Complaint in this matter, and as part of this application process were the subject of a consumer report obtained by Defendant, and to whom Defendant attempted the disclosures required at 15 U.S.C. § 1681b(b)(2)(A) through the First Advantage forms and/or portal.

> Excluded from the class definition are any employees, officers and directors of Defendant, any attorney appearing in this case and any judge assigned to hear this action, as well as any customer who is a member of a previous settlement

class or who executed an individual settlement agreement releasing the Defendant.

100.    **Numerosity. FED. R. CIV. P. 23(a)(1).**  There are thousands of Class members so that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

101.    **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members.  These common legal and factual questions include, among other things, whether Defendant's standard application process violated U.S.C. §1681b(b)(2)(A) by failing to make a "clear and conspicuous" disclosure in a document that consists solely of the disclosure, whether Defendant did so willfully and the proper measure of statutory damages.

102.    **Typicality. FED. R. CIV. P. 23(a)(3))**.  Plaintiffs' claims are typical of the claims of each Class member.  Plaintiffs for class certification purposes seek only statutory and punitive damages.  Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.

103.    **Adequacy.**  Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously.  FED. R. CIV. P. 23(a)(4).  Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the Class.

104.   **Superiority.**   Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.   FED. R. CIV. P. 23(b)(3).   The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.   It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.   Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.   Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct.   By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

### COUNT TWO: VIOLATION OF THE FCRA § 1681b(b)(3)(A)(i)

112.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

113.   Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of the "FCRA § 1681b(b)(3)(A)(i) Class" initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), who applied for an employment position with Defendant or any of its subsidiaries within the five years immediately preceding the filing of the Complaint in this matter on April 1, 2014, and as part of this application process were the subject of a consumer report obtained by Defendant, (a.) against whom Defendant took an adverse employment action based in whole or in part on the report; (b.) and to whom Defendant did not provide a copy of the consumer report

as stated at 15 U.S.C. § 1681b(b)(3)(A) at least five business days before the date the consumer's report at First Advantage was first coded as ineligible for hire.

114.   **Numerosity.  FED. R. CIV. P. 23(a)(1).**  There are hundreds of Class members so that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

115.   **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members.   These common legal and factual questions include, among other things whether Defendant provided a copy of the consumer report to the applicant or employee before declining to hire or discharging the applicant or employee based on the results thereof (§1681b(b)(3)(A)(i)), whether Defendant did so willfully and the proper measure of statutory damages.

116.   **Typicality. FED. R. CIV. P. 23(a)(3))**.  Plaintiffs' claims are typical of the claims of each Class member.  Plaintiffs for class certification purposes seek only statutory and punitive damages.  Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.

117.   **Adequacy.**  Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously.   FED. R. CIV. P. 23(a)(4).   Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the Class.

118.  **Superiority.**    Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  FED. R. CIV. P. 23(b)(3).  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.   Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

119.  Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(i), as to the Class, because it failed to provide a copy of the consumer report used to make an employment decision to Plaintiffs and all other similarly situated applicants and employees at least five days before taking an adverse action that was based in whole or in part on the consumer report.

120.  Plaintiffs and the Class are entitled to statutory damages of not less than $100 and not more than $1000 for each and every one of its violations and punitive damages under 15 U.S.C. § 1681n.

121.  Plaintiffs and the Class are entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, pray for relief as follows:

1.  an order certifying the proposed FCRA classes herein under Federal Rule 23 and appointing Plaintiffs and their undersigned counsel of record to represent same;

2.  the creation of a common fund available to provide notice of and remedy Defendant's FCRA violations;

3.  declaring that Wells Fargo committed multiple, separate willful violations of the FCRA

4.  statutory and punitive damages;

5.  attorney's fees, expenses and costs;

6.  pre-judgment and post-judgment interest as provided by law; and

7.  such other relief the Court does deem just, equitable and proper.

TRIAL BY JURY IS DEMANDED.

**TERRELL MANUEL and**
**CHARLES E. WHITE,**
**For themselves and on behalf of all**
**similarly situated individuals.**


_____/s/_____
Leonard Anthony Bennett, VSB # 37523
Susan Mary Rotkis, VSB #40693
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, VA 23601
Phone:  (757) 930-3660
Fax:  (757) 930-3662
Email: lenbennett@clalegal.com
        srotkis@clalegal.com

Christopher Colt North, VSB #16955

The Consumer & Employee Rights Law
Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax:  (757) 873-8375
Email: cnorthlaw@aol.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24 day of February, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jimmy F. Robinson, Jr., Esq.
J. Clay Rollins, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
901 East Byrd St., Ste. 1300
Riverfront Plaza, West Tower
Phone: (804) 663-2336
Fax: (804) 225-8641
E-mail: jimmy.robinson@ogletreedeakins.com
        Clay.rollins@ogletreedeakins.com
*Counsel for the Defendant*

_____/s/_____
Susan Mary Rotkis, VSB #40693
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, VA 23601
Phone:  (757) 930-3660
Fax:  (757) 930-3662
srotkis@clalegal.com