1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF VIRGINIA

3                  RICHMOND DIVISION

4

5     ----------------------------------
                                        :
6     TERRELL MANUEL, et al.,           :
                                        :    Civil Action No.
7     vs.                               :    3:14CV238
                                        :
8     WELLS FARGO BANK, NATIONAL        :
      ASSOCIATION                       :    March 11, 2015
9                                       :
      ----------------------------------

10

11

12         COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

13         BEFORE THE HONORABLE ROBERT E. PAYNE

14               UNITED STATES DISTRICT JUDGE

15    APPEARANCES:

16    Leonard A. Bennett, Esquire
      Consumer Litigation Associates, PC
17    763 J Clyde Morris Boulevard
      Suite 1A
18    Newport News, Virginia  23601
      Counsel for the plaintiffs
19
      Jimmy F. Robinson, Jr., Esquire
20    J. Clay Rollins, Esquire
      Ogletree Deakins Nash Smoak & Stewart, PC
21    Riverfront Plaza - West Tower
      901 East Byrd Street - Suite 1300
22    Richmond, Virginia  23219
      Counsel for the defendants
23

24
                    Peppy Peterson, RPR
25                Official Court Reporter
                United States District Court

1              P R O C E E D I N G S

2

3              THE COURT:  Hello.  This is Manuel and White

4     against Wells Fargo Bank, National Association, docket

5     number 3:14CV238.  Who is here for whom starting with

6     counsel for the plaintiff, and when you speak, please give

7     your name.

8              MR. BENNETT:  This is Leonard Bennett for the

9     plaintiff.

10             MR. ROBINSON:  Your Honor, this is Jimmy Robinson

11    and Clay Rollins for Wells Fargo, the defendant.

12             THE COURT:  I have a motion of the defendant to

13    modify the scheduling order, docket number 34.  I don't

14    see in it, or maybe I missed it, whether there is

15    opposition to it.

16             MR. BENNETT:  Your Honor, the plaintiff does

17    not -- as I represented to counsel, we weren't joining in

18    the motion.  We would not object to it, and, candidly,

19    it's our intention to file our Rule 23 class certification

20    motion by the existing deadline.

21             THE COURT:  Well, here's the problem I have:  It

22    looks to me like the deadline is March 16th for the filing

23    of summary judgment motions, and, yet, the plaintiffs have

24    noticed some depositions on March 16th, 30(b)(6), on a

25    broad range of topics.  Why are you so late filing your

1   discovery -- what is the discovery cutoff, Mr. Bennett?

2        MR. BENNETT:  There isn't a discovery cutoff.

3        THE COURT:  How did an order get entered here

4   without a discovery cutoff?

5        MR. BENNETT:  Because there are practical cutoffs

6   of the filings of these two motions.  With respect to your

7   first question, Your Honor, we weren't -- we weren't late

8   in doing that.  We served discovery in 2014, originally

9   deposition notices for late December before Christmas,

10  literally before Christmas, and --

11       THE COURT:  Why weren't they taken in January and

12  February?

13       MR. BENNETT:  Multiple reasons, and one of the

14  reasons is, from the plaintiff's side, because we have had

15  a challenge obtaining, at least from our perspective,

16  discovery compliance from Wells Fargo.

17       THE COURT:  You haven't brought any motions.  You

18  haven't brought a single motion to complain about it.

19       MR. BENNETT:  We have not, Your Honor.  We

20  previously had scheduled a call with Your Honor to address

21  this because your procedure requires us first to have an

22  informal conference with the Court.

23       THE COURT:  And you haven't done that.

24       MR. BENNETT:  And we called that off.  Since that

25  time, we have worked to negotiate a detailed specific set

1    of stipulations on the remaining class discovery issues.

2    We, I think -- it would be accurate to state that counsel

3    have reached agreement on the stipulations, but we're

4    waiting for actual approval of the defendant, and we're

5    working on that certainly as recently as yesterday and

6    last night and talking about them again today.

7            I'm trying not in this context to throw Mr.

8    Robinson under the bus, but our position certainly is we

9    have not received the, what had been promised and

10   committed.  I understand that he is attempting to remedy

11   that.

12           THE COURT:  When is it going to get remedied?

13           MR. BENNETT:  The Rule 30(b)(6) deposition, we've

14   just now agreed to a date that is acceptable to counsel.

15           THE COURT:  I didn't ask that question.  I said

16   when is this going to get remedied.  Here's the problem I

17   have, Mr. Bennett.  Every case that you have, there are

18   more motions to extend time than almost any other pleading

19   at all, and we lose track of what happens in these cases.

20   So we're not going to -- I'm just not going to have it

21   anymore.

22           You are going to have to do things the way

23   everybody else does.  You all have a reasonable time to

24   negotiate and sort out your disputes with each other.  If

25   you can't solve them, bring them here, because what

1  happens inevitably is we get a huge mishmash of nonsense

2  on the eve of somebody wanting to extend a deadline, just

3  like we've got in this case, and I don't know how it is

4  that an order got entered here without a discovery cutoff,

5  but is there a scheduling order entered in the case?

6           MR. BENNETT:  There is, Your Honor.  We're not

7  asking to move our dates.  The plaintiff is not asking to

8  move any of our dates.

9           THE COURT:  Well, what you are asking to do is --

10  I'm being told is you are negotiating, quote negotiating a

11  resolution of -- trying to get summary judgment decided

12  before class discovery is over.  Now, I don't know what

13  that's all about or why that's happening either, but

14  there's a lot packed into this little motion, a lot of

15  little tidbits that brought this to my attention that I

16  thought it necessary to focus a little case management

17  perspective on what's happening in the case.  The summary

18  judgment is March 16th now.  Is that where it is?

19           MR. ROBINSON:  Yes, Your Honor.

20           THE COURT:  Why can't you get your summary

21  judgment filed on March 16th?

22           MR. ROBINSON:  Your Honor, as Mr. Bennett

23  indicated, we've been challenged with respect to making

24  sure we can get some discovery completed.  We've been

25  challenged with getting documents.  We've been working

1    with the clients to make sure we get those documents.

2              THE COURT:  Wait a minute, Mr. Robinson.  You are

3    telling me you've been challenged getting documents from

4    your client, or are you saying you've been challenged

5    getting documents from Mr. Bennett's client?

6              MR. ROBINSON:  Your Honor, we've been challenged

7    not in compiling the documents from the financial

8    institution.  Mr. Bennett, we have not been challenged

9    getting documents from him.

10             We also have been challenged with respect to the

11   weather.  We have had depositions taken, Your Honor.  We

12   went out to Iowa, and we took three depositions that day.

13   I mean over the course of three days or two days.  So we

14   have done some discovery.

15             Mr. Bennett has been working with us to come up

16   with a stipulation that would obviate the need for a large

17   number of these depositions, and we just agreed upon those

18   stipulations as far as counsel is concerned, and we are

19   trying to get approval from those stipulations.  We've

20   recommended them to our client, but Your Honor is aware

21   that we can only, as counsel, make those

22   recommendations --

23             THE COURT:  Tell your client that they have until

24   the close of business Friday to decide yes or no.

25             MR. ROBINSON:  Yes, Your Honor.

1          THE COURT:  And I want all the documents that are

2   agreed to be produced produced by Monday.

3          MR. ROBINSON:  Your Honor, you're not talking --

4   you said documents that have already been agreed to be

5   produced?

6          THE COURT:  But haven't been produced, the ones

7   you are being challenged by your client.  Tell your client

8   to activate itself over the week and weekend and get

9   something done.

10          MR. ROBINSON:  Your Honor --

11          THE COURT:  Are there any disputes as to

12   documents outstanding at this point in time, things you

13   haven't agreed to be produced?

14          MR. BENNETT:  There are, Your Honor.

15          THE COURT:  What are they?

16          MR. BENNETT:  The largest divide is the class

17   member files, class members who applied for a job.

18   There's a report that was issued about them.  There was an

19   email that was sent to the putative class member telling

20   them they wouldn't get the job, and then there were notice

21   letters that the defendant and its agent, First Advantage,

22   sent to the putative class members.

23          THE COURT:  Why aren't those produced, Mr.

24   Robinson?

25          MR. ROBINSON:  We did, in fact, produce those

1   documents for the named plaintiffs, Your Honor.  We are --

2   the class documents are contingent upon the stipulations.

3   We have an agreement with counsel that we would negotiate

4   a stipulation that would obviate the need to produce those

5   documents.

6           So we haven't begun to compile those, and we have

7   now begun, in earnest, those discussions about

8   stipulations, and we are working on them, and as we've

9   indicated to Your Honor, we've made the recommendation on

10  those stipulations that our client is currently reviewing.

11          I've indicated to Mr. Bennett that our client is

12  out of the office today, Your Honor, and she's out with

13  her child, and we have an out-of-office -- something that

14  we couldn't control, and so we are in a position that we

15  have to wait at this point in time --

16          THE COURT:  When did you get this information to

17  your client?

18          MR. ROBINSON:  We've been working on this

19  stipulation, Your Honor, for --

20          THE COURT:  Mr. Robinson, when did it get in her

21  hands?

22          MR. ROBINSON:  We've been working on the

23  stipulation for weeks, Your Honor.

24          THE COURT:  I didn't ask you that.  I asked you

25  when it got in the hands of the lawyer you are telling me

1 is out.

2 　　　　　MR. ROBINSON:  Yesterday, Your Honor.  We got the

3 finalized stipulation that counsel and I went back and

4 forth on yesterday evening, Your Honor.

5 　　　　　THE COURT:  Then it's not reasonable to expect

6 her to have it by close of business on Friday.  She shall

7 agree to it or not by close of business on Monday.  She

8 can work at home.  She can read at home unless -- is there

9 some critical illness that's being attended to?

10 　　　　　MR. ROBINSON:  I do not know, Your Honor.

11 　　　　　THE COURT:  That's the kind of thing you need to

12 find out.  You all are in a four-corners game, and you're

13 not going to be playing that anymore; all right?

14 　　　　　MR. ROBINSON:  Yes, Your Honor.

15 　　　　　THE COURT:  Now, what else -- as I understand it,

16 if the stipulation is agreed to, there's no need to have

17 the class members' files; is that correct, Mr. Bennett?

18 　　　　　MR. BENNETT:  That's correct, Judge.

19 　　　　　THE COURT:  All right.  So we'll know that on

20 Monday, by Monday afternoon.  What is the next discovery

21 problem?

22 　　　　　MR. BENNETT:  Judge, there are the communications

23 between Wells Fargo and First Advantage regarding the

24 establishment and maintenance of this procedure by which

25 First Advantage was delegated to generate and send these

1   notice letters.

2           THE COURT:  Who is First Advantage?

3           MR. BENNETT:  First Advantage is the consumer

4   reporting agency or the background screening company that

5   Wells Fargo has hired to process and handle the actual

6   authorization forms.

7           THE COURT:  All right, I understand.

8           MR. BENNETT:  As well as for the generation of

9   the background check and the sending of the

10  pre-adverse-action notice letters.

11          THE COURT:  Why haven't those documents been

12  produced, Mr. Robinson, and when will they be?

13          MR. ROBINSON:  Your Honor, I think I'm

14  misunderstanding a little bit.  A large portion of those

15  documents, my understanding, were going to be compiled or

16  contained within the stipulation.

17          With respect to some of the communications

18  between First Advantage and Wells Fargo, we've provided

19  communications, Your Honor, including we provided a copy

20  of the agreement between the two parties.  We've also

21  provided --

22          THE COURT:  Excuse me just a minute.  Obviously

23  he's not talking about documents that you have provided.

24  Mr. Bennett, what documents of this ilk has he not

25  provided?  It's irrelevant -- obviously if he's provided

1   the documents, you can't be complaining about their

2   production, so what's the problem?

3          MR. BENNETT:  Correct, Judge.  He's provided the

4   contracts, but the actual procedures and protocol for the

5   process that we're challenging in this case --

6          THE COURT:  Hold on.  Are those in writing, Mr.

7   Robinson?

8          MR. ROBINSON:  I am not sure, Your Honor, but I

9   thought that was the stipulation, that we were stipulating

10  to those procedures and process.

11         MR. BENNETT:  That would be true, Your Honor, if

12  the stipulation is accepted by Wells Fargo.

13         THE COURT:  We'll know that by Monday.  If you

14  don't have those stipulations approved that eliminate this

15  issue by Monday, then by next Friday, the documents need

16  to be produced.

17         MR. ROBINSON:  Yes, Your Honor.

18         THE COURT:  And that's the documents in both

19  categories as to the consumer files and the documents as

20  to the procedures *inter se* between First Advantage and

21  Wells Fargo.

22         MR. ROBINSON:  With respect to the consumer

23  files, Your Honor, we are talking about a massive amount

24  of documents that even if this Court orders that they be

25  produced by Friday is going to take a heroic effort on all

1    parties' part to even come close to producing a small

2    percentage of those documents.

3         THE COURT:  Mr. Robinson, don't give me heroic

4    and adjectivial descriptions.  Numbers are what count in

5    making decisions of this sort.  What volume of numbers are

6    you talking about?

7         MR. ROBINSON:  I have no idea at this --

8         THE COURT:  Then you can't, Mr. Robinson -- Mr.

9    Robinson, if you have no idea what the number is, you

10   cannot then represent to the Court that it is a massive

11   undertaking.

12        MR. ROBINSON:  I can represent, Your Honor, that

13   -- and we've represented this to Mr. Bennett, that we

14   understand there's at least about 10,000 documents,

15   8,000-some-odd documents, close to 9,000, I think, that

16   we're dealing with people, files, files for those class

17   members.

18        If the stipulation is not agreed to for all of

19   Wells Fargo, we understand for Mr. Bennett's b(b)(3) claim

20   there is a potential for 8,900 to close to 10,000

21   individuals involved.  So that would be that many files,

22   Your Honor.

23        THE COURT:  Well, you know the way you deal with

24   all that is you set up a system to go get them reviewed

25   and produced, and your client can work it out about how to

1   do them.  They have people who can do that kind of thing.
2   You need to get these things done.
3           Until you show me that it's not possible to do by
4   Friday of next week, then that's your deadline.  If you
5   can demonstrate with hard evidence that it's not possible
6   to do by next week and the date upon which it is possible
7   to do, to accomplish, then -- and why it will take so
8   long, then we'll reconsider the date.  As of now, your
9   date is next Friday close of business Eastern Standard
10  Time.
11          MR. ROBINSON:  Thank you, Your Honor.
12          THE COURT:  Any other documents?
13          MR. BENNETT:  No, Your Honor.
14          THE COURT:  As of now, I heard nothing that can
15  suggest to me that you can't file your motion for summary
16  judgment by March 16th, Mr. Robinson.
17          MR. ROBINSON:  Can we make an argument in that
18  regard, Your Honor?
19          THE COURT:  If you'll give me a minute to finish
20  what I was going to say, you'll probably have that
21  opportunity.  So that failing in your papers other than
22  this amorphous discussion about what you've been talking
23  about to no avail, if you'd like to try to make a showing,
24  I will entertain it now.
25          MR. ROBINSON:  Yes, Your Honor.  We have been

1    working with Mr. Bennett's office, Your Honor, to come up

2    with this stipulation, and we have put a concerted amount

3    of energy and effort into -- and our singular focus has

4    been to try to come up with these stipulations that can be

5    agreeable for both parties, Your Honor.

6            THE COURT:  What does that have to do with

7    summary judgment?

8            MR. ROBINSON:  Because, Your Honor, our focus has

9    been on exclusively trying to get the stipulations

10   together such that we would, in fact, have an agreement

11   and then have a consent order with the parties to push

12   back the date which we had discussed with Mr. Bennett's

13   office so there wouldn't be an objection.

14           In addition to that, Your Honor, if, in fact --

15           THE COURT:  Do you have somebody in your office

16   or are you familiar with the practice in the Eastern

17   District of Virginia?

18           MR. ROBINSON:  We are, Your Honor.

19           THE COURT:  You know that that kind of approach

20   doesn't work here.  You have to have teams, I mean people

21   who are on the negotiating side and people who are on the

22   litigating side, and you have to go forward on both

23   fronts, and you know that.

24           MR. ROBINSON:  Yes, Your Honor.

25           THE COURT:  You haven't done it, though.  What

1    you've been doing is you've been negotiating.  And that's
2    not a good excuse.
3           MR. ROBINSON:  Yes, Your Honor.  We also offer --
4           THE COURT:  What is the basis on which you are
5    proposing to move for summary judgment in the first
6    instance?
7           MR. ROBINSON:  Well, there are two, Your Honor.
8    One is on the basis of the exemptions to the FCRA
9    compliant, the 1681a(y) exemption.  Your Honor is familiar
10   with that because Your Honor just ruled on one of those
11   exemptions in the Thomas case.
12          The second basis, Your Honor, is with respect to
13   the actual process with the adverse action letter.
14          THE COURT:  What does that mean?  I don't follow
15   that.
16          MR. ROBINSON:  I'm sorry, Your Honor.
17          THE COURT:  I don't follow that.  What does that
18   mean?
19          MR. ROBINSON:  The plaintiffs have taken the
20   position that adverse action in this case occurred once
21   the employer, Wells Fargo, analyzed the background check
22   and made a preliminary decision that the applicant or team
23   member was not eligible for employment at Wells Fargo, and
24   once they made that initial decision and communicated that
25   to First Advantage, who then generated the

1   pre-adverse-action notice, that constituted, in the

2   plaintiff's position, adverse action against the --

3         THE COURT:  What did?  You mentioned two

4   different things.  One was the preliminary, the decision

5   by the company internally.  The other was the generation

6   of the adverse action letter by First Advantage.  Which

7   are you talking about?

8         MR. ROBINSON:  Well, it's the communication of

9   that initial analysis to First Advantage that they

10   leave -- they argue constitutes an adverse action.

11         THE COURT:  And you think it should be what?

12         MR. ROBINSON:  We believe that it wasn't an

13   adverse action and that the adverse action was, in fact --

14   adverse action notice was properly provided to the

15   plaintiff --

16         THE COURT:  No.  When do you think the adverse

17   action occurred, if it did occur?

18         MR. ROBINSON:  At termination, Your Honor.

19         THE COURT:  So the adverse action is the

20   termination?

21         MR. ROBINSON:  Yes, Your Honor, when they

22   received the adverse action notice.

23         THE COURT:  All right.  I understand.

24         MR. ROBINSON:  And in this case, with these two

25   plaintiffs, it was even after that fact because they

1    received adverse action notices after the appeal

2    process -- I mean before they even concluded their appeal

3    process.

4            THE COURT:  All right, excuse me just a minute.

5    Nothing that I understand about those two points on which

6    you propose to move for summary judgment requires any

7    further factual development of any kind by you.  Is that

8    correct or not correct?

9            MR. ROBINSON:  We don't believe that's actually

10   correct, Your Honor.  We believe that there are, you

11   know -- our 30(b)(6) witness would provide the analysis

12   that Mr. Bennett said that he was waiting on between Wells

13   Fargo and First Advantage if we couldn't agree to the

14   stipulation.

15           THE COURT:  Mr. Robinson, that's really not what

16   I was asking you.  I was asking you from your standpoint,

17   not Mr. Bennett's standpoint, but from your standpoint.

18   You have at your command all of the information you need

19   to file summary judgment now on those claims, those

20   theories that you outlined.  You would provide an

21   affidavit of some sort from your, somebody in your company

22   about what happened, somebody from First Advantage, and

23   then the other one, the exemption is just a matter of law,

24   isn't it?

25           MR. ROBINSON:  It is a legal argument, Your

1    Honor.

2            THE COURT:  So why -- am I correct that as to the

3    second ground, you don't need any more discovery of the

4    other side?

5            MR. ROBINSON:  We have not taken, Your Honor, Mr.

6    White's deposition, the plaintiff, but we would need his

7    deposition, Your Honor, to provide what his process was.

8            THE COURT:  You know what his process was.  You

9    did it.

10           MR. ROBINSON:  We do, Your Honor, but that's not

11   evidence that we are able to provide in a summary judgment

12   --

13           THE COURT:  Of course it is.  You can provide an

14   affidavit of the people who did it.  What are you talking

15   about?

16           MR. ROBINSON:  We certainly could, Your Honor.

17   We could provide that.  We've taken Mr. Manuel's

18   deposition, but we delayed taking Mr. White's deposition

19   because he's in Phoenix, and we agreed to delay that in

20   cooperation with plaintiff's counsel because we didn't

21   want to make him come to Richmond.  So we do need his

22   testimony to also make our argument in the record, Your

23   Honor.

24           THE COURT:  I don't know why, but if you do, get

25   it.  I don't think you have any ground -- basically you

1   have a situation, Mr. Robinson, where it seems to me that

2   you had plenty of opportunity to develop these arguments

3   for summary judgment and you haven't done it, and so now

4   you're up against a deadline.

5          MR. ROBINSON:  Your Honor, there's one last --

6          THE COURT:  You largely haven't done it because

7   you think you're going to have stipulations maybe, but the

8   stipulations don't seem to have anything to do with your

9   motion for summary judgment.

10         MR. ROBINSON:  Your Honor, we do know that if, in

11  fact, we file our summary judgment motion, Mr. Bennett, as

12  we indicated in our -- as we indicated in our motion to

13  Your Honor, would be allowed and would request a 56(b)

14  motion not to respond.

15         THE COURT:  That's fine.  That's the way it

16  works.  That's what the rule says.  If it's not ready by

17  the time you're supposed to file summary judgment motions,

18  then you file a motion and he asks for time.  Now, how he

19  can ask for time in a situation like this to take other

20  discovery, I don't know, but that's something he has to

21  show and make a substantial showing on before he's

22  entitled to get the relief that he asks.

23         It's hard for him to decide exactly whether he's

24  going to need discovery until he sees what you have to say

25  in support of your motion, but as to the exemption, do you

1    need any discovery as to the exemption, Mr. Bennett?

2            MR. BENNETT:  I do not, Your Honor.

3            THE COURT:  What about the other theory that he

4    was raising, do you need any discovery as to that?

5            MR. BENNETT:  If it were just the evidence that

6    has been disclosed to date, I don't believe we would need

7    discovery.

8            THE COURT:  I just asked him what he was going to

9    file summary judgment on, and he told us two things.

10           MR. BENNETT:  Judge, if it's those legal points,

11   then, no, we don't need additional discovery.

12           THE COURT:  It seems to me you have to file your

13   motion for summary judgment, Mr. Robinson, and then

14   decide -- then he can decide whether he needs anything or

15   not.  We'll get this case moving.

16           MR. ROBINSON:  Your Honor, if we could just, you

17   know, ask the Court to give us at least one week.  If the

18   Court isn't willing to push it back one week in order to

19   give us an opportunity to get the brief drafted, get it

20   over to our client for review and submission to this Court

21   as opposed to filing it on the 16th, Your Honor, we would

22   ask if we would be allowed to file it a week later, the

23   next Monday.

24           THE COURT:  Well, Mr. Robinson, because -- you

25   must be reading my mind, because I was getting ready to

1  say that under the situation, given where you've been

2  and -- you have been trying to do some things to move the

3  case along, you can file it on the 23rd of March by the

4  close of business Eastern Standard Time.

5          MR. ROBINSON:  Thank you, Your Honor.

6          THE COURT:  Is there anything else that needs to

7  be done to get this case moving?

8          MR. BENNETT:  No, Your Honor.

9          THE COURT:  What have you done about trying to

10  settle it, gentlemen?

11          MR. BENNETT:  I think there is a divide about

12  whether it can be settled on a class basis, Your Honor,

13  and we --

14          THE COURT:  Have I assigned a magistrate judge to

15  this?

16          MR. BENNETT:  You have.  There currently is a

17  settlement conference set with Judge Novak.

18          THE COURT:  All right.  I'll let that work itself

19  out then.  You made a demand on them for settlement?

20          MR. BENNETT:  We have not made a class demand.

21  We now will.  We have an estimated class size, and we will

22  make that demand by the close of business tomorrow.

23          THE COURT:  Anything else that needs to be done,

24  gentlemen?

25          MR. BENNETT:  No, Your Honor.

```
 1              THE COURT:  All right.  Let's get about getting
 2    the case ready to go, folks, and I encourage you to
 3    continue your discussions and your efforts, but Ogletree
 4    Deakins is not a small law firm, and there isn't anything
 5    that would keep you from talking and working at the same
 6    time over there, and if the client doesn't want to deal
 7    with that, then that's something you have to work out with
 8    your client.  That's the way it's done here.  Anything
 9    else?  Nothing?  Thank you all very much.
10              MR. BENNETT:  Thank you, Judge.
11              THE COURT:  Bye.
12
13                   (End of proceedings.)
14
15
16              I certify that the foregoing is a correct
17    transcript from the record of proceedings in the
18    above-entitled matter.
19
20
21    _____/s/_____              _____
      P. E. Peterson, RPR               Date
22
23
24
25
```