IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| TERRELL MANUEL, *et al.*, ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WELLS FARGO BANK, NATIONAL ) <br> ASSOCIATION, ) <br> Defendant. ) <br> _____) | Civil No. 3:14cv238 (DJN) |

## MEMORANDUM OPINION

This matter comes before the Court on the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on Plaintiffs' Motion for Final Approval of Class Action Settlement, Application for Service Award to the Class Representative, and Application for Award of Attorneys' Fees (ECF No. 128) filed on March 4, 2016. The Court held a Final Fairness Hearing on March 15, 2016. For the reasons set forth below, the Court hereby GRANTS Plaintiffs' Motion.

### I. BACKGROUND

The Motion for Final Approval represents the culmination of nearly two years of hotly contested litigation and negotiations between the parties. The parties now seek the Court's final approval of the Settlement Agreement and dismissal of this lawsuit.

#### a. Allegations

On April 1, 2014, Plaintiff Terrell Manuel ("Manuel") commenced this class action on behalf of himself and all others similarly situated, alleging that Defendant Wells Fargo willfully failed to comply with the pre-adverse action notification requirements of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(3), before taking an adverse employment action

against him. The Third Amended Complaint (ECF No. 41), now acting as the operative complaint, added an additional claim alleging that Defendant willfully failed to comply with the disclosure and authorization requirements set forth in 15 U.S.C. § 1681b(b)(2) before obtaining a consumer report about him for employment purposes.

The FCRA provisions at issue in Count One require that "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless: (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and, (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person." 15 U.S.C. § 1681b(b)(2)(A).

Count Two alleges that Wells Fargo also violated § 1681b(b)(3)(A)(i) of the FCRA, which requires that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and, (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under section 1681g(c)(3) of this title." 15 U.S.C. § 1681b(b)(3)(A)(i).

The FCRA imposes liability for punitive or statutory damages only upon a finding of the defendant's negligence or willful failure to comply. 15 U.S.C. §§ 1681n, 1681o. Without a finding of willful non-compliance, Plaintiffs must establish actual damages. 15 U.S.C. § 1681o.

2

### a. Litigation History

The parties have zealously litigated this case since its inception. This includes aggressive early discovery, depositions, discovery disputes, summary judgment, certification, cross-motions to strike and a motion to stay. As with any class action lawsuit, summary judgment and class certification marked the pivotal points in the litigation.

On August 19, 2015, Judge Payne issued two orders, one denying Wells Fargo's Motion for Summary Judgment (ECF No. 94), and the other granting in part Plaintiffs' Motion for Class Certification (ECF No. 96).

In denying Defendant's summary judgment motion with respect to Plaintiffs' "willfulness" claim, the Court expressed its doubt in the strength of that claim. Specifically, the Court cited the conflicting precedent on the issue of whether a waiver in a disclosure violates the FCRA, tilting the analysis in favor of Wells Fargo's position that it did not act willfully. *Manuel v. Wells Fargo Bank, N.A.*, 2015 WL 4994538, at *18 (E.D. Va. Aug. 19, 2015). However, the lack of evidence that anyone at Wells Fargo relied on that precedent precluded the Court from granting summary judgment with respect to Wells Fargo's willfulness. *Id.*

The Certification Order certified two separate classes of consumers, the "Impermissible Use Class" and the "Adverse Action Class" (together, the "Settlement Class"). The Impermissible Use Class now consists of:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), who applied for an employment position with Defendant or any of its subsidiaries between April 1, 2012, and May 31, 2015, and as part of this application process were the subject of a consumer report obtained by Defendant, and to whom Defendant attempted the disclosures required at 15 U.S.C. § 1681b(b)(2)(A) through the First Advantage forms and/or portal.

The Impermissible Use Class has 229,393 members. The Adverse Action Class now consists of:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), who applied for an employment position with Defendant or any of its subsidiaries from April 1, 2012, until November 30, 2015, and as part of this application process were the subject of a consumer report obtained by Defendant, (a) who Defendant rejected for employment; (b) and to whom Defendant did not provide a copy of the consumer report as stated at 15 U.S.C. § 1681b(b)(3)(A) at least five business days before the date the consumer report at First Advantage was first coded as ineligible for hire.

The Adverse Action Class has 5,840 members. Once the Court had denied summary judgment and certified the classes, the parties then found themselves in a position to engage in meaningful settlement talks.

### c. Settlement

On October 22, 2015, the parties participated in an in-person mediation at defense counsel's Minneapolis office. They agreed on Rodney Max, an experienced mediator. After negotiating all day with significant concessions from both sides, the parties entered an agreement to settle the class claims and memorialized that agreement in a Memorandum of Understanding (MOU). The Parties continued negotiating the Final Settlement Agreement until filing their Joint Motion for Preliminary Approval on December 1, 2015.

The Settlement Agreement requires Wells Fargo to pay $12 million into a Settlement Fund for the benefit of the Settlement Class. The Settlement Administrator, Epiq Class Action & Claims Solutions, Inc., ("Epiq") will send a check to every class member. These checks will distribute the entirety of the Settlement Fund, less costs of the class notice and administration, attorneys' fees and costs, and the class representative award. Each member of the Impermissible Use Class will receive a check for $35.00, and each Adverse Action Class member will receive a check for $75.00. In exchange for the compensation, class members agree to release Wells Fargo from any and all employment-related FCRA claims, as well as any state law or common law equivalent claims.

4

On December 17, 2015, the Court entered an order granting preliminary approval of the settlement (ECF No. 118) after a hearing on the matter. The order also appointed Epiq as the class administrator and approved the notice that Epiq would send ("Class Notice"). On January 15, 2016, Epiq began the notification process by sending the Class Notice via first-class U.S. Mail to the class members. Epiq also established a website and a toll-free number, in addition to sending out an email blast to all class members with an email address on record.

On March 4, 2016, Plaintiffs moved this Court for final approval of the settlement. On March 15, 2016, the Court conducted a Final Fairness Hearing, during which no class members objected to the settlement.

## II. ANALYSIS

Plaintiffs ask this Court to approve the Settlement Agreement, the request for attorneys' fees and the service award for the class representative. The Court will examine each of these requests. As part of the review of the Settlement Agreement, the Court will also review the notice to class members.

### a. Settlement Agreement Approval

Unlike most other civil suits, the Court must approve class action settlements. Federal Rule of Civil Procedure 23(e) provides that the parties can settle and dismiss a class action only with court approval against the standards of fairness, reasonableness and adequacy. Manual for Complex Litigation (Fourth) § 21.62 (2004) (citing Fed. R. Civ. P. 23(e)(1)(C)). Rule 23(e) requires that Courts considering proposed class action settlements assess whether the settlement serves the best interests of represented class members. When the proposed settlement intends to preclude further litigation by absent persons, due process requires the adequate representation of their interests. *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158 (4th Cir. 1991). Though

the parties enjoy a "strong initial presumption that the compromise is fair and reasonable," the Court must still "appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). The Fourth Circuit provided the framework for a reviewing court to determine whether a settlement meets the fair, reasonable and adequate standards in *Jiffy Lube*.

### i. Fairness

When assessing the fairness of a settlement, the Court looks primarily at whether a "settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *In re Jiffy Lube*, 927 F.2d at 159, *Berry v. Schulman*, 807 F.3d 600, 615 (4th Cir. 2015). To make that determination, the Court considers four factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [FCRA] class action litigation." *In re Jiffy Lube*, 927 F.2d at 159.

In the present action, the application of each factor weighs decidedly in favor of a fair settlement. First, the settlement discussions occurred after the Court had certified the classes and denied summary judgment, leaving either settlement or trial as the only real remaining options. Second, the parties had engaged in extensive and aggressive discovery. Third, the in-person negotiations took place over the course of an entire day in front of a seasoned and respected private mediator. Finally, this Court would have difficulty overstating Class Counsel's experience in the area of FCRA class action litigation.

### ii. Adequacy and Reasonableness

The adequacy and reasonableness assessment looks at whether the class members received proper compensation for the case they could present. *See Berry*, 807 F.3d at 615-16 (finding that injunctive relief properly compensated the plaintiffs giving up statutory damages when the District Court found the claim to those damages "speculative at best"). The Fourth Circuit looks at five factors when making an adequacy and reasonableness calculation: "(1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159. While all five factors enter into the calculus, the strength of the plaintiff's claims on the merits deserves the most weight. *Berry*, 807 F.3d at 615 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 (4th Cir. 1975)).

The factors in this case again weigh heavily in favor of a finding of adequacy and reasonableness. While Plaintiffs survived summary judgment, the ultimate merit of Plaintiffs' claims lack certainty. Though the Court reserved for a jury the question of Wells Fargo's willful actions, it noted the conflicting precedent on the issue. *Manuel v. Wells Fargo Bank, N.A.*, 2015 WL 4994538, at *18 (noting that defendants rarely succeed on summary judgment on the issue of willfulness). This conflicting precedent could preclude a finding of willfulness, but Wells Fargo had yet to provide evidence that it relied on that conflicting case law. *Id.* Without a finding of willfulness, Plaintiffs would have needed to establish actual damages and proceed on a uniform "actual damages" claim. 15 U.S.C. §§ 1681n, 1681o. These actual damages would not realistically exceed the statutory damages. (Mem. in Supp. of Pl.'s Mot. for Final Approval

("Pl.'s App. Mem.") at 5.) Given these difficulties with the willfulness claim, the benefit of the substantial relief provided by the settlement without the risk of litigation demonstrates the adequacy of the Settlement Agreement.

Likewise, the other factors weigh in favor of an adequate settlement agreement. First, a trial on the merits could have dragged on and consumed many more resources. Second, while the Court has no reason to doubt Wells Fargo's ability to pay a litigated judgment, it takes nothing for granted in the present economy. Finally, and perhaps most importantly, not a single class member has filed or pursued an objection. Only one class member even initiated the process to object to the settlement, but this lone objector withdrew his objection. This lack of opposition strongly supports a finding of adequacy. *In re MicroStrategy, Inc. Sec. Lit.*, 148 F.Supp.2d at 667-68 (citing *Flinn*, 528 F.2d at 1173).

The Court finds that the Settlement Agreement presents a fair, reasonable and adequate bargain between Defendants and all members of both the Impermissible Use Class and the Adverse Action Class.

### b. Notice

The Court also reviews the notice directed at class members to ensure compliance with Rule 23. Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The Court determines the reasonableness of the effort based on the circumstances, looking at the anticipated results, costs and amount involved. *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003). In plain, easily understood language, the notice must convey the nature of the action and claims, the opportunity and manner of opting out, the binding effect of the judgment, and the opportunity to enter an appearance through an

attorney. *Id.* Directly mailing notice to class members satisfies due process, and "the interests of absent plaintiffs are sufficiently protected . . . when those plaintiffs are provided with a request for exclusion that can be returned within a reasonable time to the court." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-14 (1985).

Here, the notice process undertaken by settlement administrator Epiq satisfied due process and the requirements of Rule 23. On January 15, 2016, Epiq mailed the Court-approved Class Notice through the U.S. Postal Service to 5,480 Adverse Action Settlement Class members and 229,393 Impermissible Use Settlement Class members. After obtaining an alternate address for those notices returned as undeliverable, Epiq re-mailed them. As of March 4, 2016, only 11,942 (approximately 5.2% of the Settlement Class) remained undeliverable. In addition to the direct mail, Epiq established a website, an email inbox and a toll-free line to provide class members with additional information. On January 28, 2016, Epiq sent an email blast of the approved class notices to 221,317 class members with an email address on file. Having already approved the notice sent to class members, the Court also finds the process of delivering that notice "the best practicable under the circumstances" as required by Rule 23.

### c. Award of Attorneys' fees

Plaintiffs also ask this Court to approve an award of twenty-five percent of the settlement fund for attorneys' fees. The Supreme Court has long held that an attorney who recovers a common fund can assess his fee against the entire fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citing a line of decisions dating back to *Trustees v. Greenough*, 105 U.S. 527 (1882)). In fact, by the time the Supreme Court decided *Blum v. Stenson* in 1984, the point that "under the 'common fund doctrine' . . . a reasonable fee is based on a percentage of the fund bestowed on the class" had such widespread acknowledgement that the Court needed only a

footnote to make it. 465 U.S. 886, 900 n.16 (1984). District Courts within this Circuit have also favored the percentage method. *Jones v. Dominion Resources Services, Inc.*, 601 F.Supp.2d 756, 759 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases.")

As an alternative to the percentage method, courts also have the option of using the lodestar method. This requires the Court to calculate the lodestar figure by multiplying the hours expended by a reasonable hourly rate, and then the Court can increase or decrease that figure according to a variety of factors.[1] *In re Microstrategy, Inc.*, 172 F.Supp.2d 778, 786 (E.D. Va. 2001). Some courts incorporate the lodestar analysis into the percentage method by cross-checking the lodestar calculation against the percentage calculation. *Jones*, 601 F.Supp.2d at 759-60.

In the instant action, this Court will apply the percentage method preferred by most courts in common fund cases. The Court's preference for the percentage method, in addition to the absence of any objection to the fee award, obviates the need for an exhaustive review of each of the twelve lodestar factors. Having selected the percentage method, the Court must next determine the reasonableness of counsel's request to peg that percentage at twenty-five.

Class Counsel's request appears reasonable in light of the trend in common fund fee awards. Recent empirical data on fee awards demonstrates that class action percentage awards for attorneys' fees generally fall between twenty and thirty percent. Newberg on Class Actions

---

[1] The Fourth Circuit uses the following twelve factors: 1) time and labor expended; 2) novelty and difficulty of the questions raised; 3) skill required to properly perform the legal services; 4) attorney's opportunity costs in pressing the litigation; 5) customary fee for like work; 6) attorney's expectations at the outset of litigation; 7) time limitations imposed by the client or circumstances; 8) amount in controversy and results obtained; 9) experience, reputation and ability of the attorney; 10) undesirability of the case within the legal community in which the suit arose; 11) nature and length of the professional relationship between the attorney and the client; and, 12) fee awards in similar cases. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978).

§ 15:83 (5th ed.). The average hovers around twenty-five percent. *Id.* In the Fourth Circuit, the most recent data demonstrates an average fee award of 27.7 percent.[2] *Id.* Newburg also presents evidence that breaks down the averages by case type. In the most recent available data, the percentage award in consumer cases averaged 28.7% nationwide. *Id.*

This data suggests that Plaintiffs' counsel made a reasonable request of twenty-five percent. The request tracks the overall average for percentage fee awards in common fund cases. This figure comes in just below the average for class action cases in this Circuit and the national average for consumer class action cases. But, the Court does not rely on empirical evidence alone. While declining to conduct a complete lodestar cross-check, the Court points out that Class Counsel expended large amounts of time and labor on the matter, demonstrated skill commensurate with their reputations, and achieved an excellent result for the classes in this large and complex action. Counsel has obtained compensation for each class member that fits squarely within the expected result when assessing the risk and potential outcome of a trial. Therefore, the Court finds Class Counsel's request for an award of twenty-five percent of the common fund reasonable.

### d. Class Representative Award

Plaintiff also requests the approval of a $10,000 service award, deducted from the Settlement Fund, for the named Plaintiff, Terrell Manuel. A "fairly typical" practice, incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry*, 807 F.3d at 613 (internal

---

[2] This number comes from a study of cases between 2006 and 2011. It represents an increase from a previous study that found an average of twenty percent for cases between 1993 and 2008, and 25.2% for cases between 2006 and 2007.

citations omitted). The Fourth Circuit has yet to provide clear guidance on the factors to use when assessing the reasonableness of the size of an incentive award.[3] However, several district courts have adopted the test used by the Seventh Circuit that courts should examine "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *see Kirven v. Central States Health & Life Co. of Omaha*, 2015 WL 1314086, at *13 (D.S.C. 2015) (applying the *Cook* factors to find reasonable an incentive award of $7,563.27), *Smith v. Toyota Motor Credit Corp.*, 2014 WL 4953751, at *1 (D. Md. 2014) (quoting *Cook v. Niedert* in finding reasonable an incentive award of $5,000 to each named plaintiff), *Decohen v. Abassi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) (quoting *Cook v. Niedert* to approve a $10,000 incentive award to the named plaintiff).

In this litigation, Class Counsel has represented that Mr. Manuel took an active role by participating in discovery and testifying in a deposition. He pushed the case and refrained from settling his individual claim for the duration of the litigation. Furthermore, Mr. Manuel had his name and personal details, including that a background check disqualified him from a job, mailed and emailed to 235,000 people. Defendants agreed to the award and no class member has objected to the incentive award. Therefore, the Court finds the $10,000 service award appropriate.

---

[3] Various studies have found that the average incentive award per plaintiff ranged from $9,355 to $15,992. Newberg on Class Actions § 17.8 (5th ed.)

## III. CONCLUSION

The Court finds the Settlement Agreement fair, reasonable and adequate, and therefore approves the settlement as required by Rule 23(e). After reviewing the notice directed to class members, the Court finds that it complies with the requirements of Rule 23. The Court also finds the Class Counsel's request for an attorneys' fee award of twenty-five percent of the Settlement Fund reasonable. Finally, the Court finds the $10,000 service award to the named plaintiff appropriate. For the reasons stated above, Plaintiffs' Motion for Final Approval of Class Action Settlement, Application for Service Award to the Class Representative, and Application for Award of Attorneys' Fees (ECF No. 128) is GRANTED.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: March 15, 2016